INTERCONTINENTAL COMMUNICA-
TIONS CONSTRUCTION CORPORA-
TION, Earl Ohlinger and Winifred Oh-
linger, Plaintiffs-Appellees,

v.

George FOX, also known as George Fox,
Jr., Defendant-Appellant.

No. 15998.

United States Court of Appeals
Seventh Circuit.

June 28, 1967.

Barry J. Freeman and Marvin G. Freeman, Chicago, Ill., of counsel, for appellant.

James F. Flanagan, Mary M. Shaw and Halfpenny, Hahn & Ryan, Chicago, Ill., for appellees.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

The plaintiffs Intercontinental Communications Construction Corporation, a Puerto Rico corporation, and Earl Ohlinger and Winifred Ohlinger, citizens of Puerto Rico, brought this diversity action for a declaratory judgment and other relief against the defendant, George Fox, a citizen of Illinois. The defendant appeals from a judgment for the plaintiffs in the amount of $6,604 entered by the district court sitting without a jury.

On March 30, 1963, the plaintiffs and the defendant entered into an agreement whereby the plaintiff corporation agreed to purchase the defendant Fox's one-half interest in the corporation. The agreement provided that the purchase price for the defendant's stock $75,000, was payable as follows: $22,500 on the closing date, April 13, 1963, and the balance in quarterly installments over a period of two years, the final payment due on April 13, 1965. The agreement also provided, in part, that Fox was to be paid $8,715.40

"to compensate * * * him for all expenses incurred on behalf of" the corporation and $32,700 "purporting to be the amount of money loaned" by Fox to the corporation. The agreement stated that the $32,700 was "subject to audit" and that "if said amount is incorrect, [the corporation] shall have the right to deduct the amount of the discrepancy from any future payments due * * * under this agreement. * * * "

The plaintiff corporation paid all of the amounts due under the contract except the final installment on the stock purchase. This payment, in the amount of $6,660.78, was deposited with the clerk of the district court in conjunction with the filing of the instant action. In Count I of their complaint, the plaintiffs alleged that an audit of the "loan account" referred to in the agreement of March 30, 1963 had disclosed that Fox's account was overstated. The plaintiffs sought a declaration that they were entitled to deduct the amount of the overstatement from the final payment due Fox. In Count II, the plaintiff Earl Ohlinger alleged that he had been forced, as an accommodating party, to pay the balance of a note executed by Fox. Ohlinger demanded judgment against Fox in the amount of $1,414.34.

The district court found for the plaintiffs in the amount of $5,200 on Count I and in the amount of $1,404 on Count II, and directed that these sums be returned to the plaintiffs out of the money deposited with the clerk of court. This appeal followed.

*Count I*

The facts which led the district court to conclude that Fox's loan account on the books of the plaintiff corporation was overstated by $5,200 are relatively simple, but several minor, legally irrelevant conflicts in the evidence have created issues where none actually exist. In our view, accepting the facts as stated by the plaintiffs, the defendant was entitled to judgment on Count I as a matter of law.

Late in October 1961, the defendant Fox travelled to Puerto Rico, seeking an investment opportunity. There he met Earl and Winifred Ohlinger, who were engaged in a promising, but financially-starving, communications construction business in partnership with Anastacios Ortiz. Fox's initial overtures to the Ohlingers were rejected; the Ohlingers instead turned to a friend, Martinez, for operating capital. Martinez became a third partner with Earl Ohlinger and Ortiz. A short time later, the Ohlingers and Ortiz informed Fox that Martinez had agreed to part with his interest in the business for approximately the same amount he had contributed to it. Fox purchased Martinez' interest for $5,200, and began advancing additional sums to the business to meet its operating expenses.

In November 1961, the Ohlingers and Fox decided to form the plaintiff corporation to carry on the growing business, eliminating Ortiz and repaying his investment. Fox summoned his accountant from Chicago to assist them by instituting a bookkeeping system for the corporation. After consulting with Winifred Ohlinger, who had kept such fragmentary records of the partnership as had been maintained, the accountant prepared a statement of income and expenses for the partnership for the period from October to December 1, 1961, and prepared a beginning balance sheet for the corporation as of December 1.

The corporation was organized with the legal minimum capital of $1,000, half credited to Earl Ohlinger and half to Fox. The remainder of the amounts which Ohlinger and Fox had contributed to the partnership prior to incorporation, and the amount which Ortiz had put into the business prior to incorporation, were reflected in the current liabilites section of the balance sheet as "loans payable." Fox's "loan payable" account included the $5,200 paid to Martinez for Martinez' interest in the business, which in turn represented the amounts contributed to the partnership by Martinez. Thus, $12,-

600 [1] appeared as "loans payable—G. Fox, Jr.;" $3,717.22 [2] appeared as "loans payable—E. Ohlinger;" and $8,682.78 appeared as "loans payable—A. Ortiz." The account listed as payable to Fox is the account held to be overstated by the district court.

The district court found that "Fox was credited with $5,200.00 which he claimed was an advance to the corporation but which was in fact a part of the purchase price he paid to A. Ortiz [3] for his interest in the business." This finding is erroneous in one respect and misleading in another. Fox did not claim that the $5,200 included in the loan account on the beginning balance sheet of the corporation had actually been advanced to the corporation. The corporation was in the process of being organized and the business of the partnership was being transferred to it. Fox's claim was that the "loans payable" accounts set up for Ortiz, Ohlinger, and Fox represented a logical and acceptable way of reflecting the financial contributions which had been made to the partnership, and that Fox was entitled to stand in the shoes of Martinez with respect to the latter's contribution. The court's finding also implies that because the $5,200 was actually paid by Fox for the purchase of a partnership interest, this amount could not be treated as a corporate obligation on the books of the corporation. Such an implication begs the question presented. The plaintiffs similarly avoid the issue by contending that the $5,200 "was incorrectly designated as a 'loan', since it represented the amount Fox paid for his ownership interest in the corporation."

The real question is whether it was permissible to reflect on the books of the new corporation, as an obligation of the corporation to Fox, the contributions made to the partnership by the partner whose interest Fox purchased (for an amount corresponding to the partner's contributions). The answer is yes. The method of accounting employed by Fox's accountant, in organizing a corporation owned equally by Fox and Earl Ohlinger, to dissolve the existing partnership and to reimburse the partners as their interests appeared was an acceptable method. The "loans payable" accounts set up for Ortiz, Ohlinger, and Fox included the amounts paid by each of them into the partnership, plus $5,200 paid into the business by Martinez, which was credited to Fox. Fox was entitled to receive credit for the latter amount as the assignee of Martinez' partnership interest. Fox's (and Martinez') contributions to the business were thereby treated in the same manner as the contributions made by Ortiz and Ohlinger.

In short, the corporation was to repay each of the partners for his interest in the business which was transferred to the corporation. No reason appears why such an interest could not be treated as an advance, or loan, to the corporation. The Ohlingers argue that their consent to this arrangement at the time the corporation was organized was given without full knowledge of the facts, and they complain that the loan accounts stated on the opening balance sheet of the corporation are wholly attributable to the efforts of the defendant Fox. These arguments are irrelevant, inasmuch as the accounting steps taken have not been shown to be improper or objectionable in any way. It follows that the loan account of the defendant Fox on the books of the plaintiff corporation was not overstated.

1. This figure represented the amounts advanced to the business by Fox and Martinez, whose interest Fox purchased, less $500 deducted as Fox's payment for half of the stock in the plaintiff corporation.

2. This figure represented Earl Ohlinger's contribution to the partnership operation, less $500 deducted as payment for his half of the corporate stock.

3. At the trial, the plaintiffs contended that Fox purchased Martinez' interest in the partnership. Fox took the position that he purchased Ortiz' interest, that Martinez was Ortiz' "silent partner." This conflict is immaterial. It is conceded that Fox was purchasing someone's interest, for an amount corresponding to the seller's prior contribution to the business.

## Count II

As has been stated, Count II alleged that Earl Ohlinger, as an accommodating party, paid the balance of a note executed by Fox, the proceeds of which Fox had received.

The evidence disclosed that in December 1961 the corporation agreed to reimburse Fox "for all expenses while in Puerto Rico on company business as well as his cost of living in Puerto Rico. * * * " The evidence also showed that while in Puerto Rico, because of the unavailability of rental housing, Fox purchased a condominium apartment. He purchased the apartment in his own name in March 1962 and sold it in January 1963. As part of the purchase price, Fox borrowed $2,730 from a bank in Puerto Rico and signed a note evidencing the loan. The note was cosigned by Earl Ohlinger.

The apartment was used by Fox for several weeks and by the Ohlingers for approximately two months. It also served on occasion as the office of the corporation. Fox made several payments on the loan during this time and paid the other incidental apartment expenses. Upon the sale of the apartment, Fox retained the proceeds, but he did not repay the balance of the loan. The balance came due after the agreement for the sale of Fox's interest in the corporation was executed on March 30, 1963, and the corporation and Earl Ohlinger eventually paid the amount owing, $1,414.34.

The district court found that the condominium apartment was purchased for the use of the corporation, thereby implying that Fox was entitled to reimbursement for all expenses incurred in connection with it. The court found, however, that because Fox received the proceeds from the sale of the apartment

it was his duty to make an accounting to the plaintiffs, which was not done.[4] He therefore held that the plaintiffs were entitled to recover from Fox the amount they had been forced to pay on the loan. We agree with the conclusion of the district court, but for a different reason.

The note in question was clearly Fox's obligation. He received the proceeds and applied them to the purchase of the apartment. Any expenses subject to reimbursement to him by virtue of his December 1961 agreement with the corporation were determinable when the apartment was sold in January 1963, and even though such expenses might have been sufficient to permit repayment of the loan, they were distinct from Fox's obligation on the note. Fox received the proceeds from the sale of the apartment, but he did not repay the balance outstanding on the loan.

Fox contends that the evidence shows that he sustained a personal loss of $1,500 on the sale of the apartment for which he was not reimbursed and that he should be permitted to set off this amount against the amount paid by the plaintiffs on the loan. But Fox is barred from asserting this claim by the agreement of March 30, 1963. The agreement was entered after the sale of the apartment had been concluded, and therefore after any expenses reimbursable by the corporation in connection with the apartment became known. The agreement provided for a payment to Fox of $8,-715.40 as satisfaction for "all expenses incurred on behalf of" the corporation. Fox is thereby estopped from now claiming that any additional unreimbursed expenses exist which may be applied to offset his obligation to repay the loan.

The judgment of the district court is reversed in part and affirmed in part.

---

4. The district court's findings relating to Count II are as follows:

Defendant George Fox purchased an apartment in Puerto Rico and said apartment was bought for the use of the corporation. Said defendant paid all except the sum of $1,404.00 for the apartment and obtained a loan for that amount of money, a note for which was likewise signed by plaintiffs. Defendant George Fox failed to pay said $1,404.00 note and same was paid by plaintiff, Intercontinental Communications Construction Corporation. Said defendant sold the apartment and received all the proceeds. He treated the property as his own and did not account to the plaintiffs for any profit or loss.